### DETERMINED IN THE

# COURT OF ERRORS AND APPEALS

#### OF THE

## STATE OF NEW-JERSEY,

### , AT OCTOBER TERM, 1849.

---

## THE PROPRIETORS OF THE BRIDGES OVER THE PASSAIC AND HACKENSACK v. THE STATE.

---

1. The contract made by the commissioners by virtue of the provisions of "An act for building bridges over the Passaic and Hackensack," passed November 24, 1790, is not a lease, although the operative words are words proper to create a term.
2. A *grant* of a franchise by the state for a term of years is not a lease.
3. The toll bridges over the Passaic and Hackensack, erected under the act of 1790, are liable to be taxed as other toll bridges are.

---

This was a writ of error, brought to remove the judgment of the Supreme Court affirming an assessment of taxes made by the assessor of the township of Harrison, in the county of Hudson, on the bridges of the plaintiffs over the Passaic and Hackensack. The assessment had been removed into the Supreme Court by *certiorari*, and was sustained by the decision of the Supreme Court. 1 *Zabr.* 384.

The state of the case will be found in the report of that decision *ubi sup.*

The case was argued before the CHANCELLOR, Justices RANDOLPH and OGDEN, and Judges PORTER, SCHENCK, WALL, and SINNICKSON.

593

*Gifford* and *Bradley*, for plaintiffs in error ; *W. Pennington* and *F. T. Frelinghuysen*, for defendants.

The whole court, except the CHANCELLOR, concurred in affirming the judgment, upon the grounds contained in the opinion of the court below.

The CHANCELLOR. By the 11th section of the act of November 24, 1790, the commissioners were authorized and empowered, at their discretion, to contract and agree, with any person or persons who would undertake the same, for the erection of the bridges, for such toll, for so many years, and upon such conditions, as, in the discretion of the commissioners should appear expedient. The last proviso of the 22d section of this act provides, " that the bridges to be built by virtue of this act shall continue the property of the persons therein named, (that is, the commissioners,) their executors, administrators, or assigns, for the term of ninety-nine years from the passing of this act, and no longer." By an indenture, made the 19th February, 1793, between the commissioners, of the one part, and Samuel Ogden and others, of the other part, reciting the said 11th section of the act of November 24, 1790, and that the party thereto of the second part had agreed with the said commissioners to erect, build, and maintain the said bridges for the term and on the conditions therein after mentioned. The commissioners, in consideration of the covenants in the said indenture after reserved and contained on the part of the said party of the second part, demised, granted, and to farm let, unto the said party of the second part, the said bridges, to be erected, as therein afterwards is declared, together with the tolls appertaining thereto, not to exceed certain rates specified in the said indenture : to have and to hold the said bridges, with the said specified tolls, unto the said party of the second part, their executors, administrators, or assigns, from the 24th of November, 1792, for, during, and until the full end and term of ninety-nine years. And the said party of the second part, for themselves, their heirs, executors, and administrators, did, by the said indenture, covenant, grant, and agree, to and with the said party of the first part, and the survivors and survivor

of them, and the executors, administrators, and assigns of such survivor, to erect the said bridges, and to construct the same in a certain manner, specified in the said indenture, and to construct a draw in each bridge, in such part thereof as should be determined by the said commissioners, and to build the bridges of such material, and of sufficient strength to be safe, &c., all of which shall be determined by the said commissioners ; and to keep the said bridges, and the causeways leading thereunto, from the bridge on the east side of the Passaic river to the bridge over the Hackensack river, in good and sufficient repair for and during the term aforesaid ; and at the expiration of said term well and truly to deliver up the said bridges and causeways, in good and sufficient repair, unto such person or persons as may be by law authorized to receive the same ; the bridges to be completed on or before the 24th November, 1794. And the said commissioners covenanted with the said party of the second part to cause good and sufficient causeways to be made from the east side of the bridge over the Passaic river to the upland on Bergen, on the east side of the bridge over the Hackensack river, on or before the 1st December, 1795. And it was further covenanted and agreed between the said parties, that if, at any time after the said bridges and causeways should be completed, any part of the agreements and covenants in the said indenture contained, on the part and behalf of the party thereto of the second part, should be broken, the trustees of the road and ferries from Newark to the road leading from Bergen Point to Paulus Hook, established by law, "in whose custody this agreement is to be lodged by law," shall and may cause a prosecution to be commenced and carried on for such breach in the name or names of the said commissioners, or the survivors or survivor of them, and in the name or names of the executor or executors, administrator or administrators, of such survivor.

This instrument is neither more nor less than the contract or agreement which the commissioners, by the 11th section of the act of November 24, 1790, were empowered to make with any person or persons who would undertake to build the bridges for said tolls for so many years, and on such conditions as to the·

commissioners should appear expedient, and can have no more or other effect than if the party of the second part had contracted to build the bridges for the tolls to be derived from them for a smaller number of years. It is no more an assignment of the property in the bridges, than an agreement that the builders should have the tolls for fifty years for building the bridges would have been an assignment of the property in the bridges. It is simply a contract on the part of the commissioners, acting as trustees for the state, that the party thereto of the second part, as a consideration for building the bridges, shall have the . tolls for a certain number of years.

It is a misconception, I appehend, to suppose that the word *assigns*, in the last proviso to the 22d section of the act of November 24, 1790, means the persons who shall contract to build the bridges. It was uncertain, at the passage of this act, how many years' toll would be agreed upon as sufficient to compensate for the building of the bridges. Hence it is clear that the word *assigns*, in this proviso, does not mean the persons who should contract to build the bridges, for the persons intended by this proviso are to hold the property in the bridges for the whole term of ninety-nine years, under all circumstances, and without regard to the question how many years' toll might be agreed upon as sufficient to compensate for the building of the bridges.

The nature of the contract or agreement contemplated in the 11th section required that the property in the bridges should be put, by the act, in persons other than the parties who should contract to build the bridges, for the tolls thereof, for a time to be agreed upon between them and the commissioners. Accordingly this proviso puts the property in the bridges in the commissioners, their executors, administrators, and assigns (legal assigns), trustees for the state, for the whole term of ninety-nine years. Where would the property in the bridges have been if the party of the second part in this contract had undertaken to build the bridges for the tolls for fifty years?

By the contract itself the party of the second part covenant with the commissioners, and the survivors and survivor of them, and the executors, administrators, and *assigns* of such

survivor to erect, &c. What meaning can be given to the word *assigns* here, if by this very contract the party undertaking to build the bridges became the assigns of the property in the bridges?

The act to prolong the time granted for erecting the bridges, passed November 5, 1794, after the said contract or agreement was made, gives the understanding of the legislature as to the nature of that contract. It calls the party of the second part to that contract " stockholders contracted with by Doctor Samuel Tuthill and others, commissioners authorized to contract for building bridges," &c., not assigns of the property in the bridges, but simply, according to the fact, contractors for building the bridges.

It seems clear to me that the property in the bridges is not in the defendants below, but that they have only a right to receive the tolls of the bridges for the number of years specified in the said contract, as a compensation for building the bridges.

We have an act providing that tenants shall pay the tax, and be allowed to deduct it from the rent. This is not a case within that act; no rent is payable here, and if the builders of the bridges are compelled to pay tax they have no remedy.

It is said the act of 1846 taxes toll bridges. There are toll bridges which are private property, and therefore subject to taxation. It does not follow that toll bridges which are the property of the state, or of commissioners who are trustees for the state, are subject to taxation, nor that persons who have, by contract with the state, through its commissioners, a right to the tolls of bridges for a certain number of years, as a compensation for building the bridges, are to pay tax on the bridges.

The state, by its commissioners, contracted with the defendants below to permit them to receive the tolls for the number of years specified in the contract, as the price or consideration for the building of the bridges. This is all the right or interest given by the contract to the defendants below. The effect of the contract is the same as if the defendants below had contracted to build the bridges for the privilege of receiving the

tolls for ten years.   The property in the bridges is not in them, but in the commissioners, as trustees for the state, and in the state.   The law of 1846, taxing toll bridges, does not apply to this case, and if it could, the defendants below are not the persons liable to pay the tax on these bridges.

In this view of the case, I am constrained to say that I think the judgment of the Supreme Court should be reversed.

Judgment affirmed.

CITED *in Cook* v. *State*, 4 *Vr.* 478.